UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

RABBI ALEXANDER MILCHTEIN,
ESTER RIVA MILCHTEIN,

        Plaintiffs,

        v.                                Case No. 13-C-0940

JOHN T. CHISHOLM,
ROBIN JOSEPH,
ELOISE ANDERSON,

        Defendants.

---

DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DOC. 69), DENYING AS MOOT PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT (DOC. 89), AND DISMISSING CASE

        This case arises from proceedings in the Milwaukee County Circuit Court Children's

Division involving two of the plaintiffs' children and proceedings of the Division of

Milwaukee Child Protective Services (MCPS) concerning the care or custody of those

children.  Asserting violations of the First, Fourth, and Fourteen Amendments, plaintiffs

have sued defendants in their official capacities seeking declaratory and injunctive relief.

Initially, plaintiffs sued Milwaukee County District Attorney John T. Chisholm, former MCPS

Director Arlene Happach, former Milwaukee County District Attorney Lori Kornblum, and

Wisconsin Department of Children and Families Secretary Eloise Anderson.  After

Happach left her position on July 10, 2014, Acting Interim Director Mary Pat Bohn was

substituted as a defendant, only to be replaced by MCPS Division Administrator Robin

Joseph.  Kornblum ceased employment with the Milwaukee County DA's office "with

terminal leave ending on February 3, 2014," and the court granted defendants' unopposed

motion to dismiss her from this case. At this stage of the litigation, defendants have moved

for summary judgment on the grounds that plaintiffs' claims are moot, and/or otherwise barred by the doctrines of claim preclusion and *Rooker-Feldman*. Having heard oral argument on January 12, 2017, and upon consideration of the record, defendants' motion will be granted.

The following findings of fact are drawn from the first set of joint stipulated facts or are otherwise not in dispute. Although plaintiffs filed numerous objections to the proposed findings, many of their objections failed to include "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Civil L. R. 56(b)(2)(B)(i)(E.D. Wis.) Instead, plaintiffs objected on the grounds that the findings did not disclose "actual discussions" or offered a "subjective characterization of the facts." Without more, unsupported objections do not create a genuine issue of material fact.

## FINDINGS OF FACT

Plaintiffs, Rabbi Alexander Milchtein and Ester Riva Milchtein, are practicing Orthodox Jews residing in Milwaukee, Wisconsin. They have 15 children that they have – or will – home school, place in Jewish day schools, or send to Jewish boarding schools. The Milchteins are part of Milwaukee's Orthodox Jewish community. Rabbi Milchtein serves as Rabbi and Executive Director at the Milwaukee Synagogue for Russian Jews: Congregation Moshiach Now. His synagogue offers services to the greater Milwaukee Russian Jewish community of over 1400 families.

Defendant John T. Chisholm is the District Attorney of Milwaukee County, and Lori Kornblum was a Milwaukee County Assistant District Attorney from January of 1992 until February of 2014. Defendant Robin Joseph is the Division Administrator of the Division of Milwaukee Child Protective Services (MCPS), formerly known as the Bureau of

2

Milwaukee Child Welfare. MCPS is a subunit of the Wisconsin Department of Children and Families. Jospeh is the current successor in office to Arlene Happach, who was the Director of the Bureau at the time of the events at issue in this case. Finally, defendant Eloise Anderson is the Secretary of the Wisconsin Department of Children and Families.

C.M., who was born on January 14, 1995, is a biological daughter of Rabbi and Mrs. Milchtein and the Milchtein's oldest child. At age 13, C.M. was sexually assaulted, with criminal charges successfully brought against the perpetrator. When C.M. was 15 years old, the Milchteins sent her to a Jewish school in Brooklyn, New York, with two siblings, including her sister, S.M., who is the second oldest child. However, the Milchteins decided to send her to a Jewish boarding school in Chicago closer to home when C.M. turned 16.

On September 23, 2011, MCPS received a referral regarding C.M. Between September 27 and October 19, 2011, MCPS Initial Assessment Social Worker Holly Jones investigated the referral. The investigation included interviews with the person who had made the report to MCPS, discussions with C.M., discussions with Rabbi and Mrs. Milchtein, a home visit with the family, and interviews with the other children in the Milchtein home. The other Milchtein children interviewed by Jones stated that there was no abuse in the home, and Jones observed no physical or emotional signs of abuse.

On October 17, 2011, Jones informed MCPS Regional Manager Lori Wagnitz that she did not believe there were any "safety factors" preventing C.M. from remaining in the Milchtein home. The next day, Jones met with C.M. and her parents. Rules in the Milchtein home were discussed, and C.M. refused to stay in the home. Jones placed C.M. in temporary protective custody pursuant to authorization given by Wagnitz. C.M. spent the night in the Lutheran Social Services Assessment Center in Milwaukee (LSS).

3

On October 19, 2011, Initial Assessment Supervisor Martha Stacker spoke with Jones and C.M. According to Stacker, C.M. expressed profound fear, cried profusely and continuously, and refused to go home. Stacker felt she had no option other than to detain her because she could not force C.M. to go home. Accordingly, Stacker directed that C.M. return to LSS in temporary protective custody.

On October 21, 2011, an emergency hearing regarding the temporary protective custody request was convened in Milwaukee County Circuit Court Children's Division, Case No. 2011JC999. Assistant District Attorney Kathy Kucharski appeared for the State. Because it was a religious holiday, the Milchteins did not appear. At the State's request, the Circuit Court issued an order giving MCPS temporary physical custody of C.M. until a rescheduled hearing could take place on October 24, 2011.

On October 24, 2011, a second hearing on temporary physical custody was held in Case No. 2011JC999. Kucharski appeared for the State. C.M. appeared personally with Attorney Catherine Flaherty. Rabbi and Mrs. Milchtein appeared personally, with their respective attorneys, Sheila Smith and Kerri Cleghorn. (*Id*. at 2:5–15.) The Circuit Court issued an order again giving MCPS temporary physical custody of C.M., finding that "probable cause exists to believe that the . . . [c]hild/juvenile will cause injury to self or be subject to injury by others" and that her "[p]aren't(s), guardian, legal custodian or other responsible adult is neglecting, refusing, or unable . . . to provide adequate supervision and care." (Temporary Physical Custody Order, October 24, 2011, Ex. 1004 at 1.) The Circuit Court approved physical placement of C.M. at LSS. (*Id.* at 3)

On October 26, 2011, MCPS filed a Child In Need of Protection and/or Services (CHIPS) petition in Case No. 2011JC999. (Petition for Protection or Services, October 26,

4

2011, Ex. 1005.). Two days later, the Circuit Court entered orders appointing attorneys Smith, Cleghorn, and Flaherty as legal counsel, respectively, for Rabbi Milchtein, Mrs. Milchtein, and C.M.

On October 28, 2011, a summons and a notice of hearing were issued in Case No. 2011JC999, scheduling a plea hearing for November 21, 2011. The notice indicated that all parties had the right to have an attorney present. (*Id.*). A court entry on the Juvenile Court Record indicates that Flaherty moved to amend the non-secure order, and the court ruled that C.M. could "observe Sabbath for the weekend only at an alternate placement from sundown on Friday, November 4th to sundown on Saturday, November 5th." (Court Docket for 2011JC999, Ex. 1011 at November 7, 2011.)

On November 9, 2011, the Circuit Court conducted a hearing on a motion to amend the temporary physical custody order. Kornblum and ADA Maria Dorsey appeared for the State. Attorney Sarah Henery appeared for MCPS. C.M. appeared in person and her attorney, Flaherty, appeared by telephone. Rabbi and Mrs. Milchtein appeared with their respective attorneys, Smith and Cleghorn. The Court ordered that C.M. could observe the Sabbath, in accordance with the times set forth in the motion or times deemed appropriate by Rabbi Milchtein, "with a family that is appropriate and that will be identified." (Motion Hearing Transcript, November 9, 2011, Ex. 1014 at 39:14–15.) The Court directed that potential families were to be identified to MCPS by Wednesday prior to the Sabbath and that, in identifying a family, MCPS was to listen to any objections from the parents or from C.M., but such objections were not to be determinative. (*Id.* at 48:16–22.)

On November 21, 2011, Rabbi Milchtein filed for substitution of the judge assigned to Case No. 2011JC999. (Request for Substitution of Judge, November 21, 2011, Ex.

1015.) A conference was conducted in Case No. 2011JC999. Kornblum and Dorsey appeared for the State; C.M. appeared personally with Flaherty; Rabbi Milchtein appeared personally with Smith; and Mrs. Milchtein appeared personally with attorney Robb Marcus. The plea hearing previously scheduled for November 21, 2011, was postponed to December 7, 2011, and the existing temporary physical custody order was continued to the next court date. (Conference Transcript, November 21, 2011, Ex. 1016.)

On December 1, 2011, Kornblum and MCPS filed an emergency petition for temporary guardianship of C.M. and requested that MCPS be given authority to consent to a school placement for C.M. The Circuit Court held a hearing on the petition with Kornblum appearing for the State, and all other parties represented by counsel. Following discussion, the case was adjourned for a plea hearing and guardianship hearing on December 7, 2011. (Temporary Guardianship Petition Hearing Transcript, December 1, 2011, Ex. 1018.)

On the morning of December 7, 2011, Cleghorn filed a judicial substitution request in Case No. 2011JC999, seeking to replace Judge Stephanie Rothstein, Circuit Court Branch 25, who had been assigned to the case after Rabbi Milchtein's earlier substitution request. (Substitution of Judge, December 7, 2011, Ex. 1019.) Later that morning, the parties appeared before Judge Rothstein. Kornblum appeared for the State; Henery appeared for MCPS; Jacqueline Voykin-Steffes appeared for CSSW; C.M. appeared with Flaherty; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Attorney Pam Mehta, substituting for Cleghorn. Judge Rothstein accepted the judicial substitution request and the court clerk announced that the case was reassigned to Judge Karen Christenson, Circuit Court Branch 37. The parties were directed to appear before Judge

Christenson later in the day for a hearing on the temporary guardianship petition and for a plea hearing in Case No. 2011JC999. (Transcript of Proceedings Before Judge Rothstein, December 7, 2011, Ex. 1020.)

Judge Christenson conducted a hearing in Case No. 2011JC999 that afternoon. (Initial Appearance Transcript, December 7, 2011, Ex. 1021.) Kornblum and Mehta informed the Circuit Court that Smith had provided Kornblum with a signed authorization form regarding C.M.'s schooling. Moreover, Kornblum advised the Court that, in light of the signed authorization form, the temporary guardianship was no longer needed and the State withdrew the petition for temporary guardianship. (*Id.* at 4:2–16.)

The Circuit Court then proceeded with the plea hearing in Case No. 2011JC999, and found that the CHIPS petition stated probable cause. (Court Docket for 2011JC999, Ex. 1011 at December 7, 2011.) Additionally, the court ordered a psychological examination of C.M., as well briefing on whether copies of that examination should be provided to the parents. (*Id.*) School and placement options for C.M. were discussed. (*Id.*) At that point, it seemed all parties were agreeable that Torah Academy of Milwaukee was an appropriate schooling option. (Initial Appearance Transcript, December 7, 2011, Ex. 1021, 11:9–11.) The Court instructed the parties to work together for the best interests of the child. (Court Docket for 2011JC999, Ex. 1011 at December 7, 2011.) A pretrial conference was scheduled for January 17, 2012, trial was scheduled for February 28, 201, and the existing non-secure custody order was continued. (*Id.*)

On December 9, 2011, C.M. was removed from placement at LSS and placed in the home of Scott and Tamar Heifetz. (Permanency Plan, December 8, 2011, Ex. 1022, ¶ 12 b.) Four days later, CSSW filed a permanency plan and an original disposition report to

the court in Case No. 2011JC999. (*Id.*; Court Docket for 2011JC999, Ex. 1011 at December 13, 2011.) The next day, Flaherty filed a memorandum supporting the earlier request to prohibit release of C.M.'s psychological evaluation to her parents. (Support to Motion to Prohibit Release of Psychological Evaluation, December 14, 2011, Ex. 1023.) Two days later, C.M.'s case was transferred to an Ongoing Case Management Team supervised by Sara Waldschmidt. (Excerpt from response to Plaintiffs' First Request for Production to Defendant Director of Bureau of Milwaukee Child Welfare, Ex. 1024 at BMCW 03948.) Meanwhile, in Case No. 2011JC999, Smith filed a petition for a psychological examination of C.M., a proposed order, and a brief opposing the request to deny parental access to C.M.'s psychological evaluation. (Petition for Examination and Proposed Order, December 23, 2011, Ex. 1025; Memorandum Opposing Request to Deny Parental Access, December 23, 2011, Ex. 1026.)

C.M. began school at Homestead High School in Mequon, Wisconsin, on January 6, 2012. (Permanency Plan, p. 2, excerpted from response to Plaintiffs' First Request for Production to Defendant Milwaukee County District Attorney, Ex. 1027 at DA 03214.) That day, Waldschmidt sent to Rabbi Milchtein and Mrs. Milchtein written notification that there would be a court hearing on January 10, 2012, "regarding whether temporary guardianship of [C.M.] should be transferred to the Bureau of Milwaukee Child Welfare for the purpose of signing consents for participation in mental health treatment – specifically individual therapy." (Notification of Court Hearing, January 6, 2012, Ex. 1028.) The notice informed the parents that they had the right to attend and to be represented by their attorneys.

On January 10, 2012, Kornblum filed a petition in Case No. 2011JC999 asking that MCPS be given temporary guardianship of C.M. Later that day, the Circuit Court

8

conducted a hearing on the petition. Kornblum appeared for the State; C.M. appeared in person with Flaherty; Rabbi Milchtein appeared in person with Smith; Mrs. Milchtein appeared in person with Cleghorn; and attorney Steven Weichman appeared as guardian ad litem for C.M. (Temporary Guardianship Hearing Transcript, January 10, 2012, Ex. 1030, 2:2–18.) In the course of that hearing, the Court held an off-record conference with the attorneys and the parties reached an agreement under which Rabbi Milchtein signed an Informed Consent Policy and a Release of Information Form authorizing C.M. to begin therapy with Family Options, subject to the understanding that, in signing those forms, Rabbi Milchtein was not authorizing the release to Family Options of the CHIPS petition, any temporary protective custody order or related paperwork. (*Id.* at 34:24 to 36:1.) While Mrs. Milchtein did not sign the forms, Cleghorn indicated that she was in agreement with Rabbi Milchtein. (*Id.* at 36:21–22.) The Circuit Court then administratively withdrew the temporary guardianship petition. (*Id.* at 35:4–8.)

On January 17, 2012, a pretrial/settlement conference was held in Case No. 2011JC999. Kornblum appeared for the State; Flaherty appeared on behalf of C.M.; Smith appeared for Rabbi Milchtein; and Cleghorn appeared for Mrs. Milchtein. (Settlement Conference Transcript, January 17, 2012, 2:4–12: Ex. 1031.) A final pretrial conference was scheduled for February 22, 2012, trial was scheduled for February 28, 2012, and the existing non-secure custody order was continued. (Court Docket for 2011JC999, Ex. 1011 at January 17, 2012.)

On February 8, 2012, the Circuit Court issued notice of a permanency plan review hearing on April 5, 2012. (Notice of Hearing, February 8, 2012, Ex. 1032; Court Docket for 2011JC999, Ex. 1011 at February 8, 2012.) Subsequently, Mrs. Milchtein filed a CHIPS

petition regarding C.M. under Wis. Stat. § 48.13(4), initiating Case No. 2012JC73. The petition alleged that C.M. was in need of protection or services because she refused to return to the home of her parents. (Petition for Protection or Services, February 24, 2012, Ex. 1033.)

A pretrial conference was held in Case No. 2011JC999 on February 28, 2012. At that conference, Kornblum appeared for the State; Flaherty appeared for C.M.; Smith appeared for Rabbi Milchtein; and Cleghorn appeared for Mrs. Milchtein. They advised the Court that they were unable to complete discovery, and the State indicated that it was not willing to dismiss the CHIPS petition in Case No. 2011JC999. Afterward, the case was adjourned until the permanency plan review hearing scheduled for April 2, 2012, the final pretrial conference was rescheduled to May 7, 2012, and the trial was rescheduled to June 18, 2012. (Pretrial Conference Transcript, February 28, 2012, Ex. 1034; Court Docket for 2011JC999, Ex. 1011 at February 28, 2012.)

On March 28, 2012, C.M.'s foster parents, David and Sherry Blumberg, filed a completed permanency plan questionnaire in Case No. 2011JC999. (Permanency Plan Questionnaire, March 28, 2012, Ex. 1035.) Also on March 28, 2012, the State filed a temporary guardianship petition alleging that "the parents are refusing to sign consents, which are needed for therapy, treatment and payment authorization through Title 19 services." (Petition for Temporary Guardianship, March 28, 2012, Ex. 1036, Temporary Guardianship Worksheet, Section C.)

On April 2, 2012, the Circuit Court held a hearing on the temporary guardianship petition in Case No. 2011JC999. Appearing in person or by counsel were Kornblum, C.M., Rabbi Milchtein, and Mrs. Milchtein. (Temporary Guardianship Hearing Transcript, April

2, 2012, Ex. 1063, 2:3–13.)   The Court found that proper notice was given and awarded MCPS temporary guardianship for "purposes of signing consents which are necessary for payment and treatment authorizations for Title 19." (*Id.* at 9:8–13.)   On that date, the Circuit Court also conducted the previously scheduled permanency plan review hearing. (*Id.* at 12:12 to 19:19.)   As a result, it entered a permanency plan hearing order and calendered the next permanency plan hearing for September 6, 2012. (Permanency Plan Hearing Order, April 2, 2012, Ex. 1037.)  The pretrial conference in Case No. 2011JC999 was rescheduled to June 12, 2012, although trial remained scheduled for June 18, 2012. The Circuit Court continued the current custody order. (Court Docket for 2011JC999, Ex. 1011 at April 2, 2012.)

On May 11, 2012, the State filed a motion for summary judgment in Case No. 2011JC999. (Notice of Motion and Motion for Summary Judgment, May 11, 2012, Ex. 1038.)  Soon thereafter, Flaherty filed a motion to quash a subpoena for a deposition of C.M. in Case No. 2011JC999. (Notice of Motion and Motion to Quash Subpoena, May 22, 2012, Ex. 1039.)  Following the hearing, the Circuit Court denied the motion.  (Hearing Transcript, May 23, 2012, Ex. 1040.)

On June 8, 2012, Rabbi Milchtein and Mrs. Milchtein filed a joint motion in opposition to the State's summary judgment motion in Case No. 2011JC999. (Respondents' Joint Motion to Dismiss Motion for Summary Judgment, June 8, 2012, Ex. 1043.) Then, on June 12, 2012, the Circuit Court conducted a pre-trial conference/motion hearing in Case Nos. 2011JC999 and 2012JC73. (Motion Hearing Transcript, June 12, 2012, Ex. 1044.)  Kornblum and ADA Heather Placek appeared for the State; Flaherty appeared for C.M.; Smith appeared for Rabbi Milchtein; and Cleghorn appeared for Mrs.

Milchtein. (*Id*. at 2:7–20.) The court denied the State's motion for summary judgment orally on the ground that a jury could view the facts in the case in more than one way. (*Id*. at 4:5–17.) Moreover, it denied a request to merge 2011JC999 and 2012JC73 and ruled that 2011JC999 would continue to trial on the CHIPS claim under Wis. Stat. § 48.13(10), although the State would not be proceeding as to the claim under Wis. Stat. § 48.13(11) (parent neglects, refuses, or is unable to obtain necessary treatment or take necessary steps to ameliorate emotional damage to child). (Court Docket for 2011JC999, Ex. 1011 at June 12, 2012.) The case was adjourned until trial on June 18, 2012.

A hearing was conducted in Case No. 2011JC999 on June 18, 2012. Kornblum appeared for the State; Flaherty appeared for C.M.; Smith appeared for Rabbi Milchtein; and Cleghorn appeared for Mrs. Milchtein. (Jury Trial Hearing Transcript, June 18, 2012, Ex. 1046, 2:4–12.) The Court ruled that any trial in Case No. 2011JC999 would be postponed until after the pending criminal case involving Rabbi Milchtein. (*Id.* at 48:3–17.) It also instructed the parties to brief a variety of outstanding issues, including: (1) health care records access and confidentiality (*id.* at 48:18–21); (2) whether Mrs. Milchtein had a conflict of interest regarding her possible testimony against Rabbi Milchtein (*id*. at 49:1–5); and (3) whether Kornblum had a conflict of interest (*id.* at 49:5–7). The court further instructed the parties to attach to their submissions any documentary evidence participate in mediation with Judge Malmstadt. (*Id.* at 53:22–24 and 57:6–8.) The trial date in Case No. 2011JC999 was rescheduled to December 3, 2012. (Court Docket for 2011JC999, Ex. 1011 at June 18, 2012.)

On August 6, 2012, CSSW filed a permanency plan for C.M. (Court Docket for 2011JC999, Ex. 1011 at August 6, 2012.) The next day, the Circuit Court issued notice of

12

a permanency plan review hearing on September 27, 2012. (Court Docket for 2011JC999, Ex. 1011 at August 7, 2012.) Subsequently, the parties participated in and completed mediation with Judge Malmstadt on August 29, 2012. (Mediation Notes, August 29, 2012, Ex. 1047; e-mail of Cleghorn, September 20, 2012, excerpted from response to Plaintiffs' First Request for Production to Defendant Milwaukee County District Attorney, Ex. 1048 at DA 04037.) Because of the mediation and the proposed settlement agreement, Kornblum asked the Court for relief from the scheduling order requiring briefs to be submitted.

On September 27, 2012, a pretrial conference/hearing was held in Case Nos. 2011JC999 and 2012JC73. Kornblum appeared for the State; C.M. appeared in person with Flaherty; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. (Pretrial Conference Transcript, September 27, 2012, Ex. 1049.) Counsel reported that the Milchteins were unwilling to sign the consent decree, citing Kornblum's alleged conflict of interest, allegations related to S.M., and a Circuit Court order allowing MCPS to pick up S.M. for the purpose of an investigation. (*Id.* at 2:23 to 16:1.**)** The parties and the court discussed the Milchteins' request to have Kornblum removed from the case based on an alleged religious conflict of interest with the Milchteins. ADA Mary Sowinski ("Sowinski"), Kornblum's supervisor at the District Attorney's Office, declined to remove Kornblum from the case. (*Id.* at 35:20 to 39:15.) The Court directed the parties to try to resolve the remaining issues and scheduled a final pretrial conference for October 30, 2012. Trial remained scheduled for December 3, 2012, and the existing custody order was continued. (Court Docket for 2011JC999, Ex. 1011 at September 27, 2012.)

The Circuit Court also conducted a permanency plan review hearing for C.M, and entered the plan. However, no future permanency plan dates were scheduled because

13

C.M. would turn 18 years old on January 14, 2013. (Court Docket for 2011JC999, Ex. 1011 at September 27, 2012.)

On October 30, 2012, a pretrial conference was held in Case Nos. 2011JC999 and 2012JC73. (Court Docket for 2011JC999, Ex. 1011 at October 30, 2012.) Kornblum appeared for the State; C.M. appeared with Flaherty; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. (*Id.*) The court entered an Order for Protection of Mental Health Records, and the case was adjourned for a final pretrial conference on December 3, 2012. The trial date was rescheduled to January 7, 2013, and the existing custody order was continued. (*Id.*)

On December 3, 2012, a pretrial conference was held in Case Nos. 2011JC999 and 2012JC73. Kornblum and Sowinski appeared for the State; C.M. appeared in with Flaherty; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. The Circuit Court noted that C.M. would turn 18 years old on January 14, 2013, and that C.M. could continue to live with her foster parents and complete her secondary education. The Court ordered the cases dismissed, effective after C.M.'s 18th birthday on January 14, 2013. At the state's request, the Court also ordered that the dismissal be stayed pending any appeal. (Court Docket for 2011JC999, Ex. 1011 at December 3, 2012.)

On January 14, 2013, the Circuit Court entered the dispositional order/judgment. (Court Docket for 2011JC999, Ex. 1011 at January 11, 2013; Order Dismissing Petition in Case No. 2011JC999, Ex. 1065) On the same date, the State filed a Notice of Intent to Pursue Postconviction or Postdisposition Relief in Case No. 2011JC999. (Court Docket for 2011JC999, Ex. 1011 at January 14, 2013.) On July 26, 2013, the State filed a Notice of

Abandonment of Appeal in Case No. 2011JC999. (Notice of Abandonment of Appeal, July 26, 2013, Ex. 1050.)

Meanwhile, on September 7, 2012, Kornblum received a call from a person claiming to be a former teacher of S.M. in New York. The caller told Kornblum, on condition of anonymity, that S.M. was afraid to return home. (Verified Complaint Ex. 1000, ¶ 52; Pretrial Conference Transcript, Case No. 2011JC999, September 27, 2012, Ex. 1049, 11:12–17.) The call was reported to MCPS and, on September 11, 2012, MCPS sent Intake Assessment Social Workers Crystal Reyes and Julia Konrardy-Cromey to the Milchtein home to investigate the allegations. They were denied entry to the Milchtein home and Mrs. Milchtein informed Konrardy-Cromey by telephone that they did not have permission to speak to her children or to enter the home and that all contact by MCPS should be through Attorneys Smith and Cleghorn. (Initial Assessment – Primary Report at 3, excerpted from Plaintiffs' First Request for Production to Defendant Milwaukee County District Attorney, Ex. 1051 at DA 03780.)

Also on September 11, 2012, MCPS asked Kornblum to seek a pick-up order pursuant to Wis. Stat. § 48.19(1)(c), so that MCPS could investigate the referral regarding S.M. After business hours on September 11, 2012, Kornblum called Judge Joseph Donald, the duty judge for the Children's Division of the Circuit Court, to request a pick-up order. Judge Donald questioned Kornblum about the reasoning behind the request and decided not to make any determination immediately, scheduling the matter for a court appearance on the record on the following morning. (Pick-up Order Hearing Transcript, September 12, 2012, Ex. 1052, 3:21 to 4:4.) Kornblum did not notify the Milchteins or their attorneys about the scheduled hearing the next morning.

On September 12, 2012, Judge Donald conducted a hearing on the pick-up order request at which Kornblum appeared for the State. Appearing on behalf of MCPS were Reyes, Konrardy-Cromey, Initial Assessment Supervisor Nadine Sherman, and then-Assistant Director of MCPS Mary Pat Bohn. The Court denied the request for an out-of-home placement for S.M. and authorized a limited pick-up order for the purpose of conducting an investigatory interview of S.M. (*Id.* at 33:20–25.)

On September 13, 2012, Reyes and Konrardy-Cromey traveled to Illinois to interview S.M. at the home of her school principal, Ms. Turen. The Milchteins retained an attorney, Vladimir M. Gorokhovsy, to represent S.M. In the course of the interview on September 13, 2012, Gorokhovsky left the interview and the interview continued in his absence. Following the interview on September 13, 2012, MCPS found no evidence rising to the level of abuse or neglect warranting emergency detention or a CHIPS petition regarding S.M. (Verified Complaint Ex. 1000, ¶ 59; Pretrial Conference Transcript, Case No. 2011JC999, September 27, 2012, Ex. 1049, 13:3–6.)

On December 6, 2012, S.M. telephoned Konrardy-Cromey and said she was fearful to go home to her father. (Petition for Protection or Services, December 13, 2012, Ex. 1053 at 4–5, ¶¶ K-L.) After meeting with S.M., Konrardy-Cromey and Reyes consulted with MCPS Initial Assessment Supervisor Nadine Sherman who directed them to take S.M. into protective custody. (*Id.* at 6, ¶ T.) Reyes contacted Rabbi Milchtein and informed him that S.M. was being taken into protective custody. (*Id.*)

On December 10, 2012, the State filed a request for an emergency detention order, alleging that S.M. refused to return home, was fearful of the home situation, claimed that her father had abused her. (Order for Temporary Physical Custody & Request for

Emergency Detention or Pick-up Order, December 10, 2012, Ex. 1054.)  An emergency detention hearing was held and the case was given the number 2012JC914. (Emergency Detention Hearing Transcript, December 10, 2012, Ex. 1055.)  ADA Kucharski appeared for the State; S.M. appeared  with Attorney Robert Mochel; Mrs. Milchtein appeared  with Cleghorn and Attorney Duke Lehto. Also appearing were Kornblum, ADA Cynthia Brown ("Brown"), CSSW Ongoing Case Manager Amanda Schlosser, Reyes, and Konrardy-Cromey. (*Id.* at  2:5 to 3:10.)  The Circuit Court found that "probable cause exists to believe that the . . . [c]hild/juvenile will . . . be subject to injury by others" and that her "[p]arent(s), guardian, legal custodian or other responsible adult is neglecting, refusing, [or] unable . . . to provide adequate supervision and care." (Order for Temporary Physical Custody & Request for Emergency Detention or Pick-up Order, December 10, 2012, Ex. 1054 at 1.)

On December 13, 2012, a CHIPS petition was filed in Case No. 2012JC914. (Petition for Protection or Services, December 13, 2012, Ex. 1053; Court Docket for 2012JC914, Ex. 1058 at December 13, 2012.)  The next day, the Circuit Court issued a Notice of Hearing in Case No. 2012JC914, scheduling a plea hearing for January 8, 2013. (Notice of Hearing, December 14, 2012, Ex. 1056.)

On January 7, 2013, Mrs. Milchtein filed a motion to dismiss Case No. 2012JC914. This motion argued that the CHIPS petition did not include reliable and credible information to establish the need for services and that the petition did not include information indicating that the child was without necessary care at the time of the detention. (Respondent-Mother's Motion to Dismiss Petition, January 7, 2013, Ex. 1057.)  A hearing

on the motion was scheduled for the following day. (Court Docket for 2012JC914, Ex. 1058 at January 7, 2013.)

On January 8, 2013, a plea hearing was held in Case No. 2012JC914. Brown appeared on behalf of the State; Attorney Russ Bohach ("Bohach") appeared on behalf of S.M.; Rabbi Milchtein appeared in person with Smith; and Mrs. Milchtein appeared in person with Cleghorn. A request for substitution of judge filed by Rabbi Milchtein was received by the Court and the case was reassigned to Judge Rebecca Bradley, Branch 45. The case was adjourned to February 4, 2013, for a plea hearing and a hearing on the pending motion to dismiss. (Court Docket for 2012JC914, Ex. 1058 at January 8, 2013.)

On February 1, 2013, the State filed a brief in opposition to Mrs. Milchtein's motion to dismiss Case No. 2011JC914. (State's Response to Defense Respondent's Motion to Dismiss, February 1, 2013, Ex 1059.)  The Circuit Court convened three days later for a plea hearing and hearing on motion to dismiss Case No. 2011JC914. Brown appeared for the State; Bohach appeared for S.M.; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. The parties stipulated to an adjournment to allow more time to review the motion and the State's response to the same. The Court tolled time limits and continued the custody order to February 21, 2013. (Court Docket for 2012JC914, Ex. 1058 at February 4, 2013.)

On February 21, 2013, the  plea hearing proceeded in Case No. 2012JC914.  Brown appeared on behalf of the State; Bohach appeared on behalf of S.M.; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared  with Cleghorn.  Also appearing were Waldschmidt and CSSW Ongoing Case Manager Cira Verhage.  Mrs. Milchtein filed a request for substitution of Judge. The case was reassigned to Judge Mark Sanders, Branch

28, and adjourned until March 15, 2013. (Court Docket for 2012JC914, Ex. 1058 at February 21, 2013.)

The continued plea hearing in Case No. 2012JC914 convened on March 15, 2013. Brown appeared for the State; Bohach appeared for S.M.; Rabbi Milchtein appeared in person with Smith; and Mrs. Milchtein appeared in person with Cleghorn. Also appearing were Verhage, Waldschmidt, and Schlosser. S.M. entered a plea stipulating to the petition in Case No. 2012JC914. After each parent entered a plea contesting the petition, the Court set a briefing schedule on the motion to dismiss and scheduled a hearing on that motion for April 30, 2013. Time limits were tolled and the custody order was continued. (Court Docket for 2012JC914, Ex. 1058 at March 15, 2013.)

On April 3, 2013, Verhage filed an Original Disposition Report to the Court regarding S.M. (Original Disposition Report to the Court, April 3, 2013, Ex. 1060.) Afterward, the Circuit Court issued notice of a permanency plan review hearing on May 28, 2013. (Notice of Hearing, April 30, 2013, Ex. 1061.) However, on May 10, 2013, the Circuit Court conducted a scheduling conference in Case No. 2012JC914, at which Brown appeared for the State; Bohach appeared on behalf of S.M.; Smith appeared on behalf of Rabbi Milchtein; and Cleghorn appeared on behalf of Mrs. Milchtein. (Court Docket for 2012JC914, Ex. 1058 at May 10, 2013.) On May 15, 2013, Verhage and Waldschmidt filed a permanency plan for S.M. in Case No. 2012JC914. (Court Docket for 2012JC914, Ex. 1058 at May 15, 2013.)

A permanency plan review hearing in Case No. 2012JC914 was conducted on May 28, 2013. ADA Amanda Kirklewski, substituting for Brown, appeared on behalf of the State; Bohach appeared on behalf of S.M.; Rabbi Milchtein appeared in person with Smith; and

19

Mrs. Milchtein appeared in person with Cleghorn. Also appearing were Verhage and Schlosser. A permanency hearing order was entered by the court and the next permanency plan review hearing was scheduled for November 12, 2013. (Court Docket for 2012JC914, Ex. 1058 at May 28, 2013.)

On July 29, 2013, the Circuit Court conducted a pretrial conference in Case No. 2012JC914. Brown appeared for the State; Bohach appeared for S.M.; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. Also appearing were Verhage, Schlosser, and Waldschmidt. A final pretrial conference and motions in limine were scheduled for August 22, 2013. Trial remained set for August 26, 2013; and the existing custody order was continued. (Court Docket for 2012JC914, Ex. 1058 at July 29, 2013.)

On August 22, 2013, the Circuit Court conducted a final pretrial conference in Case No. 2012JC914. Brown appeared for the State; Bohach appeared for S.M.; Rabbi Milchtein appeared with Smith; and Mrs. Milchtein appeared with Cleghorn. The State informed the Court that it did not intend to proceed with the case and moved to dismiss. The motion was granted on grounds that it was in the best interest of the child and of the public and a dismissal order was entered. (Court Docket for 2012JC914, Ex. 1058 at August 22, 2013; Final Pretrial Conference Transcript, August 22, 2013, Ex. 1062; Order Dismissing Petition in Case No. 2012JC914, Ex. 1066.)

## CONCLUSIONS OF LAW

As an initial matter, defendants assert that plaintiffs's claims are moot because the claims for relief are based on events in the course of Children's Court Cases No.

2011JC999 and 2012JC914 and related MCPS activities involving the custody and care of C.M. and S.M. These court proceedings were dismissed on January 14, 2013, and August 22, 2013. Moreover, C.M. turned 18 on January 14, 2013, and S.M. turned 18 on December 20, 2015. Consequently, neither individual is subject to the jurisdiction of the Children's Court or MCPS. *See* Wis. Stats. § 48.02(2) and 48.13.

The mootness doctrine is grounded in Article III's requirement that courts adjudicate only "actual, ongoing cases or controversies." *Honig v. Doe*, 484 U.S. 305, 317, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). A case or controversy must exist at every stage of the proceedings and not merely when the complaint is filed. *Id.* Consequently, a case must be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L. Ed.2d 491 (1969). For instance, courts have held that students' claims for declaratory or injunctive relief are mooted by the students' graduation. *Stotts v. Community Unit School Dist. No. 1,* 230 F.3d 989, 991 (7th Cir. 2000), *see also Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S. Ct. 373, 374–75, 78 L. Ed. 2d 58 (1983).

In the case at bar, the dispute was alive when the suit was filed August 20, 2013, because the Children's Court still had jurisdiction over S.M. (C.M. was over the age of 18). However, the Children's Court dismissed the case involving S.M. three days after this case was filed and S.M. has since turned 18. Hence, there does not appear to be an ongoing case or controversy. As such, this court has jurisdiction only if the case falls within an

exception to the mootness doctrine. Plaintiffs have argued that the case falls within the "capable of repetition yet evading review" exception to the mootness doctrine or otherwise survives because they are challenging an ongoing policy. A case that is "capable of repetition yet evading review" must contain two elements: (1) the duration of the case must be too short to allow a determination on the merits, and (2) the particular plaintiff must have a reasonable expectation of suffering from the same harm again. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975) (per curiam).

In considering the plaintiffs' arguments, the court looks to the verified complaint and the declaratory and injunctive relief that they seek against the defendants in their official capacities. Specifically, plaintiffs ask the court to declare:

(1) the ADA Substitution Policy is unconstitutional under the Establishment Clause as applied to religious conflicts of interest;

(2) defendants' conduct in C.M. and S.M.'s cases and the ADA Substition Policy violates the Free Exercise Clause and the Fourteenth Amendment;

(3) Wis. Stat. § 48.57(1)(d) is unconstitutional under the First Amendment's Free Exercise Clause and the Due Process Clause of the Fourteenth Amendment;

(4) trial court directive 04-07C is unconstitutionally vague and unconstiuttional as applied to fit parents;

(5) declare any state procedures that allow the placement of a child without affording the parents an opportunity to be heard unconstituional under the Due Process Clause of the Fourteenth Amendment;

(6) declare any state procedures that allow a different judge to hear ex parte a pick up order motion when another related matter is in progress unconstitutional under the Due Process Clause of the Fourteenth Amendment;

(7) declare the Bureau's warrantless interview procedures to be unconstitional search and seizure under the Fourth Amendment;

In addition, plaintiffs ask the court to enjoin the following defendants:

(8) Chisholm, his agents and successors, from enforcing the ADA Policy in relgious conflicts of interest contexts;

(9) Chisholm, his agents, and suceessors from pursuing claims against plaintiffs regarding their children and require him, his agents, and successors to seek appointment of a special prosecutor in such a matter pursuant to Wis. Stat. § 978.045(1r)(h);

(10) Kornblum from participating in any way and in any matter involving the Milchtein children, both in the District Attorney's Office and with the Bureau;

(11) Happach and Anderson, their agents, and successors, from disregarding the religious beliefs of fit parents when making decisions regarding children in their care;

(12) Happach and Anderson, their agents, and successors from acting pursuant to the Consent Provision's "routine appointment" provision;

(13) Arlene Happach and Eloise Anderson, their agents, and successors from acting pursuant to the Religious Directive of Wis. Stat. § 48.57(1)(d).

(14) Happach and Anderson, their agents, and successors from initiating an investigation of a child without a court order, parental consent, or exigent circumstances.

Finally, plaintiffs seek a court order directing defendants to offer a written, public apology to them in light of: (1) the harm their conduct has caused their family; (2) the negative impact defendants' conduct has had on their reputation in the Jewish community; and (3) their loss of doctors who now refuse to see any of their children as a result of the Bureau's conduct in C.M.'s and S.M.'s cases. For this, plaintiffs seek costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and any other applicable authority, along with such other relief as may be just and equitable.

Plaintiffs are complaining of actions arising from an investigation and proceedings within the Milwaukee County Child Welfare System involving their two children who are no

longer subject to the jurisdiction of either Children's Court or MCPS. Their oldest daughter, who entered that system in 2011 at the age of 16, did not age out of the system until age 18. While in the state court system, the statutes provided the parents notice, representation and the opportunity to be heard. Chapter 48 of the Wisconsin Statutes governs the CHIPS petition. The department is required to initiate an investigation upon receiving a report from a mandatory reporter of suspected child abuse or neglect. If the child is taken into temporary physical custody, the statute provides for notice to the parent, guardian, or legal custodian, and a detention hearing must be held within 48 hours. Notice is required and the state bears the burden of establishing probable cause. Parents are provided with an opportunity to be heard, and the statutes provide for a plea hearing at which time any party may contest that the child is in need of protective services. Parents are advised of their rights, including the right to request a jury trial, and a fact finding hearing is scheduled if the petition is contested. Otherwise, the court will conduct a dispositional hearing if the petition is not contested while allowing for a reasonable time for the parties to prepare. The final judgment must set forth findings and disposition that may be appealed as a matter of right as well as non-final judgments or orders that may be appealed by permission when the appeal will "materially advance the termination of the litigating or clarify further proceedings, protect the petitioner from substantial or irreparable injury, or clarify an issue of general importance in the administration of justice." Wis. Stats. §§ 48.981, 48.08(2), 48.19(1) and (2), 48.21(1), 48.20(8), 48.205, 48.21, 48.255, 48.30(1), (6), and (8), 48.31, 48.335, 48.35, 808.03(1)-(2), and 808.07(1)-(2).

This court is not persuaded that the state litigation, involving the plaintiffs C.M. and S.M., was too short in duration to allow for a determination on the merits. At all times during

24

the state court proceedings, the parties were represented by counsel and had the opportunity to be heard on a variety of issues, including Kornblum's alleged conflict of interest. In addition, the statutes contemplate and provide for appellate review. At this stage, the individuals involved in the proceedings are no longer subject to the jurisdiction of the Children's Courts, Kornblum left the District Attorney's Office with terminal leave ending on February 3, 2014, and was dismissed as a defendant from this case. No other Milchtein children have been or are the subject of separate state court proceedings.

While plaintiffs contend that they fear similar action in the future, they must establish that they have some reasonable expectation of suffering the same harm again. During oral argument, plaintiffs' counsel said that there is a "possibility" the events that underlie their concerns could occur again and that should suffice. However, a "mere physical or theoretical possibility" or "speculative contingency" is not sufficient because that would mean "virtually any matter of short duration would be reviewable," *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 1183, 71 L. Ed. 2d 353 (1982); *see also Hall v. Beals*, 396 U.S. 45, 49, 90 S. Ct. 200, 24 L. Ed. 2d 214 (1969). Rather, there must be a "'reasonable expectation' or a 'demonstrated possibility' that the same controversy with recur involving the same complaining party." *Id.*, 455 U.S. at 482. To the extent that plaintiffs assert that most of their children "have been investigated and interviewed by the Bureau multiple times for abuse, even after the filing of his lawsuit," the argument lacks support in the record. The only evidence proffered by plaintiffs is a reference to a Children's Court pick-up order for forensic interviews following the initiation of the proceedings at issue involved S.M. However, nothing was filed in connection with any of the other Milchtein children and there were no allegations of abuse. There has been no activity involving the Milchtein children

in three years – since September 20, 2013 – and no allegation of improper conduct respecting any of the interviews of the other children. On this record, the case fails to satisfy the capable of repetition, yet evading review exception to mootness.

Nevertheless, there is a second exception to the mootness doctrine where a litigant challenges a policy through a declaratory judgment. In such a case, the litigant may proceed after the case becomes moot if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Milwaukee Police Ass'n v. Board of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 930 (7th Cir. 2013). The exception requires that the ongoing policy must be a "continuing and brooding presence" that "casts . . . a substantial adverse effect on the interests of the petitioning parties." *Id.*

This type of exception for mootness applies when a suit challenges a policy with lasting effects, such as where an employer involved in collective bargaining sought to declare invalid a state statute that permitted striking workers to receive assistance through state welfare programs or where a parish school board sought preclearance under the Voting Rights Act for a proposed redistricting plan that would a provide a baseline for future redistricting. *Id.*, citing *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S. Ct. 1694, 40 L. Ed. 2d 1 (1974) and *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 327–28, 120 S. t. 866, 145 L. Ed. 2d 845 (2000). In both cases, there was a class of federal claims that could continually escape adjudication. Here, plaintiffs could only invoke this exception with regard to their challenges to the DA's policy concerning case assignments for his staff attorneys, the medical consent provision in the standing order of the Children's Court that

allows for MCPS to consent to routine medical care for children in its physical or legal custody, or challenge to the statute allowing a county child welfare agency to provide for the "moral and religious training of children in its care according to the religious belief of the child or his or her parents." Wis. Stat. § 48.57(1)(d).

The Seventh Circuit's discussion in *Milwaukee Police Ass'n*, 708 F.3d at 933, highlights that this is a narrow exception and that there needs to be an injury-in-fact for this exception to apply. In *Milwaukee Police Ass'n*, the union wished to proceed with a case after the individual officer signed a complete settlement and release. *Id.*, 708 F.3d at 923. However, the union failed to proffer any other member of the union who was in the same "predicament" as the plaintiff or otherwise reference anyone or plead a single injury-in-fact. As such, the case had become "'an abstract dispute about the law" not linked to the rights of a particular plaintiff. *Id.*, 708 F.3d at 933 (quoting *Alvarez v. Smith*, 558 U.S. 87, 130 S. Ct. 576, 580, 175 L. Ed. 2d 447 (2009)).

Plaintiffs have failed to establish that any of the challenged policies or provisions constitute a "continuing and brooding presence" that cast a substantial adverse effect on these plaintiffs. As an initial matter, plaintiffs are challenging an unwritten non-substitution policy that they maintain resulted in the assignment of a Jewish assistant district attorney – Kornblum – whose beliefs were different from their own. At the same time, plaintiffs acknowledge that Attorney Kornblum is no longer employed by the District Attorney's Office and that they have no ongoing complaints with the assistant district attorneys who were assigned to S.M.'s case. According to counsel for both sides, the subsequent assignments were not made on the basis of religion. Further, plaintiffs have provided nothing more than an abstract argument regarding how the medical care consent provision or the statute

allowing the state to consider the religious beliefs of the parent and the child could potentially affect their family in the future.  The fear that they may go through this process again with any of their other thirteen children (some who were not born when this case was filed) because they are "strict parents" and "teenagers are teenagers" does not warrant an advisory opinion.  *See generally  Milwaukee Police Ass'n,* 708 F.3d at 933.

Nevertheless, defendants have also raised the doctrines of claim preclusion and *Rooker-Feldman.*  "The doctrine of claim preclusion provides that a final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." *Sopha v. Owens–Corning Fiberglas Corp.*, 230 Wis. 2d 212, 233, 601 N.W.2d 627 (1999); *see also Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). "Ordinarily a final judgment is conclusive in all subsequent actions as to all matters 'which were litigated or which might have been litigated in the former proceedings.'" *Sopha*, 601 N.W.2d at 637 (quoting *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis.2d 306, 334 N.W.2d 883, 885 (1983)).  For claim preclusion to apply, Wisconsin's courts require the presence of three factors: (1) an "identity between the parties or their privies in the prior and present suits"; (2) the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction"; and (3) an "identity of the causes of action in the two suits." *Sopha,* 230 Wis. 2d at 233-234 (footnotes omitted).

Here, the Milchteins do not dispute privity or that the dismissal of C.M. and S.M.'s cases resulted in final judgments.  Instead, they argue that the defendants have waived the issue because it was not raised as an affirmative defense and that there is no identity of claims. "As a general matter ... failure to plead an affirmative defense results in a waiver of that defense." *Devalk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir.

1987).  Defendants assert that there is no harm to the plaintiffs from their delay in raising the issue because it is similar to the *Rooker-Feldman* issue for which the defendants did plead an affirmative defense.  Moreover, Rule 15(a)(2) allows the court to freely grant leave for a party to amend its pleading when justice so requires.  Even as late as trial, pleadings may be amended where it aids the merits of the case and any objecting party fails to show it would be prejudiced.  Fed. R. Civ. P. 15(b)(1).

Here, the court finds no discussion of claim preclusion in the record prior to the filing of summary judgment.  During the September 9, 2013, hearing on plaintiffs' motion for temporary restraining order, the court discussed with the parties that  at least one of the persons was no longer a minor and /or subject to the jurisdiction of the Children's Court.  However, the focus of the discussion was on the remedies available to the plaintiffs in state court and *Rooker-Feldman*.  The minutes suggest defendants indicated that their motion would focus on *Rooker-Feldman* and qualified immunity.  As the Seventh Circuit has explained, preclusion and *Rooker–Feldman* both "define the respect one court owes to an earlier judgment. But the two are not coextensive." *See generally GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993).  Accordingly, on this record and hearing no further argument from the parties regarding prejudice,  the court finds that defendants waived this affirmative defense.

On the other hand, defendants have always maintained that the  plaintiffs' claims are inextricably intertwined with the state court judgment and therefore barred by *Rooker-Feldman*.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).  Simply put, the *Rooker–Feldman* doctrine "precludes lower

federal court jurisdiction over claims seeking review of state court judgments ... [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000). Thus, if a claim is barred by the *Rooker–Feldman* doctrine, a federal court lacks subject matter jurisdiction over the case. *Id.*

While "[i]n its most straight-forward presentment, the *Rooker–Feldman* doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment," the exact parameters are less than clear because the doctrine "is not limited to just those claims alleging that the state court judgment itself caused the federal plaintiff's injury; the doctrine also precludes federal jurisdiction over claims inextricably intertwined with a state court determination." *Remer*, 205 F.3d at 996. However, the difficult part is to discern "which claims are and which claims are not 'inextricably intertwined' with a state judgment." *Id.*

Plaintiffs insist that they are not seeking review of any state court judgment. Nevertheless, they ask this court to decide questions that are inextricably intertwined with the Children's Court proceedings. For example, plaintiffs ask this court to declare that defendants' conduct in C.M. and S.M.'s cases and the ADA substitution policy violated the Free Exercise Clause and the Fourteenth Amendment. According to plaintiffs, the selection of Kornblum as the ADA in C.M.'s case and the district attorney's refusal to make an exception to the substitution policy "unconstitutionally interfered with plaintiffs' right to raise their children in a manner consistent with their religious beliefs." They further allege that they are not unfit parents, and that the religious directive allows the "bureau to step outside

its role of ensuring the safety of Wisconsin's children to inject itself into religious issues by broadly authorizing the Bureau to disregard the religious beliefs of the parents and follow the child's, regardless of the fitness of the parents and without notice or a hearing," in violation of the First Amendment's Free Exercise Clause and the Fourteenth Amendment. Additionally, plaintiffs challenge the Bureau's scheduling of numerous medical appointments for C.M. and S.M. pursuant to the Consent Provision, which they believe is unconstitutionally vague and violates due process. Moreover, Count VII, challenges the Bureau's interview procedures of S.M., which they maintain were an unreasonable search and seizure that violated the Fourth Amendment.

Because the aforementioned decisions were taken under the supervision of the Circuit Court or pursuant to an order, plaintiffs may not proceed. The Circuit Court authorized a pick-up order, conducted hearings and reviewed decisions by MCPS based on interviews of S.M. and C.M., reviewed and acted on the Bureau's recommendations regarding home and school placement, religious observances, and authorizations for the medical care and treatment of plaintiffs' children. Moreover, the Circuit Court heard argument regarding Kornblum's alleged conflict of interest. Further, plaintiffs had the opportunity to be heard and seek appellate review in the state courts, but turned to this court for further review instead. Because plaintiffs' claims are moot and are otherwise inextricably intertwined with the orders and judgment of the Children's Court,

IT IS ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is denied as moot.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C. N. Clevert, Jr.
U.S. District Judge